87 P.3d 302

STATE of Idaho, Plaintiff–Respondent,

v.

Jimmy Thomas GLASS, Defendant–
Appellant.

No. 28805.

Court of Appeals of Idaho.

Nov. 17, 2003.

Review Denied March 30, 2004.

Molly J. Huskey, State Appellate Public Defender; Charles Isaac Wadams, Deputy Appellate Public Defender, Boise, for appellant. Charles Isaac Wadams argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

LANSING, Chief Judge.

Jimmy Thomas Glass appeals from the judgment and sentence entered after a jury found him guilty of attempted lewd conduct with a minor under sixteen. Glass contends that the district court erred in denying his motions for dismissal of the indictment and for a judgment of acquittal because, among other things, the evidence was insufficient to support a finding that he had taken a substantial step toward the completion of the crime. He also contends that the seven-year

term of probation ordered by the district court is excessive. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The Ada County Sheriff's Office conducted an "online crimes" investigation targeting Internet chat rooms. As part of the investigation, Detective Bart Hamilton created a profile for a fictional fourteen-year-old female with the screen name "boredboisegirl14" (BBG14). On November 30, 2000, Detective Hamilton, using this profile, entered a chat room and waited for subjects to contact BBG14 via private instant messages. BBG14 soon received an instant message from Glass, who was using the screen name "s3x_slave_f0r_u." At the start of the online conversation, BBG14 informed Glass that she was fourteen years old. During their conversation, Glass described for BBG14, in graphic detail, the sexual acts that he would like to perform with her. He also asked her about her past sexual experiences and offered to go to her house that day to be her "sex slave." BBG14 said that he could not go to her house because her mom was there, but she told Glass that she would see whether they could use her friend's house at a later date.

Glass contacted BBG14 again one week later. During this online chat, Glass asked BBG14 whether she had found a house that the two could use. BBG14 said that her friend's house would be available the week of December 18. Glass responded that he "[couldn't] wait." On December 15, Glass again contacted BBG14 about meeting during the week of December 18. When BBG14 said that she could arrange an apartment for the next day, Glass agreed to meet then and said that he would bring a box full of condoms. BBG14 also wrote that she would place a picture of herself in a brown paper bag and leave it in a trash can in the parking lot of a local high school swimming pool for him to pick up. Glass said that he would retrieve it and would be driving a black Honda Civic. Then, before ending the conversation, the two agreed to meet at 10 a.m.

the next day at the swimming pool, from which they would go to the apartment.

Immediately following this conversation, a police detective drove to the swimming pool and placed in the trash can a paper bag containing a photograph of an anonymous juvenile female. Shortly thereafter, as the detective watched from a distance, a black Honda Civic entered the parking lot of the swimming pool, and the driver retrieved the bag from the garbage can.

The next day, December 16, at approximately 10:20 a.m., police detectives observed the same black Honda enter the parking lot of the swimming pool, turn around, and then go back out. Immediately after the car left the parking lot, the police initiated a stop. Glass, the driver of the car, was arrested. In a search of his automobile, the police officers found a box of condoms. During a subsequent police interview, Glass admitted to logging onto the chat room with the screen name of s3x_slave_f0r_u.

Glass was charged by indictment with attempted lewd conduct with a minor under sixteen, Idaho Code §§ 18–306; 18–1508. He filed a motion to dismiss the charge, contending that (1) it was legally impossible to commit the crime of attempted lewd conduct with a minor because there was no minor child involved, and (2) there was insufficient evidence to support the indictment because his conduct did not constitute an attempt. The district court denied the motion.

At trial, after the State rested its case-in-chief, Glass moved for a judgment of acquittal on the same grounds urged in his motion to dismiss. The trial court denied the request for acquittal. At the conclusion of the trial, the jury found Glass guilty. The court imposed a unified sentence of five years with one year determinate, but suspended the sentence and placed Glass on probation for a period of seven years. Glass now appeals the judgment of conviction and the sentence.

## II.

## ANALYSIS

### A. Impossibility Defense

Glass first contends that the district court erred in rejecting his impossibility de-

fense. He argues that it would have been impossible for him to commit the crime of lewd conduct with a minor because there was no actual minor child involved, and as a result, it was also impossible for him to commit an attempt of that crime.

The same argument was recently rejected by this Court in *State v. Curtiss,* 138 Idaho 466, 65 P.3d 207 (Ct.App.2002). We there held that impossibility is not a recognized defense to attempt crimes in the State of Idaho. In determining that Idaho's attempt statute, I.C. § 18–306, does not allow for an impossibility defense, we stated:

> In that section, the Idaho legislature has specifically provided for the punishment of individuals who, like [the defendant], intend to commit a crime, act beyond mere preparation to commit the crime, but fail. The statute provides no exception for those who intend to commit a crime but fail because they were unaware of some fact that would have prevented them from completing the intended crime.

*Curtiss,* 138 Idaho at 469, 65 P.3d at 210. Accordingly, we held that factual or legal impossibility for the defendant to commit the intended crime was not relevant to a determination of the defendant's guilt of attempt. *Id.* It follows that the district court here correctly rejected Glass's proffered impossibility defense.

## B. Sufficiency of Evidence of Attempt

Glass next contends that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to show that he had attempted to commit lewd and lascivious conduct.

■ Under Idaho Criminal Rule 29, a trial court must enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." An I.C.R. 29 motion must be denied if there is substantial and competent evidence sufficient to support a guilty verdict. *State v. Hollon,* 136 Idaho 499, 501, 36 P.3d 1287, 1289 (Ct. App.2001); *State v. Willard,* 129 Idaho 827, 828, 933 P.2d 116, 117 (Ct.App.1997). On appellate review, we independently consider the evidence to determine whether a reasonable mind could conclude that the defen-

dant's guilt had been proven beyond a reasonable doubt on each essential element of the crime. *State v. Dietrich,* 135 Idaho 870, 873, 26 P.3d 53, 56 (Ct.App.2001); *Willard,* 129 Idaho at 828, 933 P.2d at 117. In so doing, this Court will construe all of the evidence in favor of upholding the verdict, *Hollon,* 136 Idaho at 501, 36 P.3d at 1289, and will not substitute its view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, or the inferences to be drawn from the evidence. *Dietrich,* 135 Idaho at 873, 26 P.3d at 56. Because Glass introduced evidence after the denial of his motion for a judgment of acquittal, we do not limit our review to the evidence presented in the State's case-in-chief but consider all of the evidence presented, including that offered by the defense. *State v. Brown,* 131 Idaho 61, 71, 951 P.2d 1288, 1298 (Ct.App.1998); *State v. Hughes,* 130 Idaho 698, 701, 946 P.2d 1338, 1341 (Ct.App. 1997).

■ Idaho's attempt statute, I.C. § 18–306, provides that "[e]very person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof" is subject to punishment for the attempted commission of that crime. Interpreting this statute, the Idaho courts have held that an attempt consists of two elements: an intent to do an act or bring about certain consequences which would in law amount to a crime, and an act in furtherance of that intent which goes beyond mere preparation. *State v. Otto,* 102 Idaho 250, 251, 629 P.2d 646, 647 (1981); *Curtiss,* 138 Idaho at 468, 65 P.3d at 209; *State v. Fabeny,* 132 Idaho 917, 923, 980 P.2d 581, 587 (Ct.App. 1999). The preparatory phase of a crime consists of "devising or arranging the means or measures necessary for the commission of the offense." *Otto,* 102 Idaho at 251, 629 P.2d at 647 (quoting Perkins, Criminal Law 557 (2d ed.1969)). To go beyond mere preparation, the actions of the defendant must "reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation of the crime." *Id.*

Glass argues that his act of driving to the swimming pool was, at most, mere preparation and fell short of a substantial step toward consummation of the crime. What conduct will constitute the requisite substantial step turns upon the facts and circumstances of each case. Of importance in this analysis is "the proximity of the act, both spatially and temporally, to the completion of the criminal design." *Id.* at 252 n. 2, 629 P.2d at 648 n. 2. It has been said that for a criminal attempt to occur, there "must be a dangerous proximity to success." *Id.* (quoting PERKINS, CRIMINAL LAW 572 (2d ed. 1969)).

Idaho appellate courts have not previously been called upon to determine what constitutes a substantial step in furtherance of the crime of attempted lewd conduct with a minor, but courts of several other jurisdictions have addressed this issue. Most have found that arranging to meet the minor for the purpose of a sexual tryst and then going to the meeting place at the prearranged time are sufficient to constitute the substantial step necessary to support a conviction for attempt. The Eleventh Circuit Court of Appeals addressed this issue in *United States v. Root,* 296 F.3d 1222 (11th Cir.2002), where the defendant had engaged in online conversations about sexual activities with an officer posing as a thirteen-year-old girl. The court noted that, under Eleventh Circuit precedent, in order to constitute a substantial step toward the commission of the crime: "[T]he defendant's objective acts, without reliance on the accompanying mens rea, must mark the defendant's conduct as criminal." *Id.* at 1228 (quoting *United States v. Carothers,* 121 F.3d 659, 661 (11th Cir.1997)). Thus, the defendant's acts, taken as a whole, must strongly corroborate the required culpability; they must not be equivocal. *Id.* The defendant's actions in that case, which included repeatedly asking the girl, via the Internet, to perform sexual acts with him, and driving five hours to meet the girl at the appointed time and place, together with his admission to arresting officers that he was meeting a thirteen-year-old girl for "sexual play," were deemed substantial steps toward the commission of the intended crime. The actions, the court said, "mark the defendant's conduct as criminal" and were "unique rather than so

commonplace that they are engaged in by persons not in violation of the law." *Id.* (quoting *United States v. Oviedo,* 525 F.2d 881, 885 (5th Cir.1976)).

In *Dennard v. State,* 243 Ga.App. 868, 534 S.E.2d 182 (2000), the Georgia Court of Appeals was asked to determine whether allegations in an indictment that the defendant engaged in sexually explicit conversations over the Internet and drove to an arranged meeting place adequately alleged a substantial step toward the commission of the crime. The court explained that the purpose of requiring a substantial step is to ensure that attempt liability will be imposed "only in those instances in which some firmness of criminal purpose is shown" and to "remove very remote preparatory acts from the ambit of attempt liability" while also allowing for apprehension of offenders at an early stage. *Id.* at 872, 534 S.E.2d 182 (quoting *Howell v. State,* 157 Ga.App. 451, 278 S.E.2d 43 (1981)). The court held that the indictment sufficiently alleged a substantial step in furtherance of the crime by its reference to the defendant's arrangements to meet the victim and his travel to the meeting place. *Id.*

Other courts have similarly concluded that arranging a meeting place and arriving there at the prearranged time are sufficient to constitute a substantial step in furtherance of the commission of a sex crime against a minor. *People v. Scott,* 318 Ill.App.3d 46, 251 Ill.Dec. 630, 740 N.E.2d 1201 (2000); *People v. Patterson,* 314 Ill.App.3d 962, 248 Ill.Dec. 534, 734 N.E.2d 462 (2000); *Chen v. State,* 42 S.W.3d 926, 930 (Tex.Crim.App.2001); *State v. Townsend,* 147 Wash.2d 666, 57 P.3d 255, 262 (2002); *State v. Grimm,* 258 Wis.2d 166, 653 N.W.2d 284 (Ct.App.2002). *But see State v. Duke,* 709 So.2d 580, 582 (Fla.Dist.Ct.App. 1998) (court concluded that defendant's actions were insufficient to constitute attempt to commit a sexual battery even though defendant discussed sexual acts with "victim," planned an occasion to carry out those acts, and arrived at a prearranged meeting place); *State v. Kemp,* 753 N.E.2d 47, 50–51 (Ind.Ct. App.2001) (defendant's alleged acts of agreeing to meet minor at a restaurant parking lot, driving there, and bringing condoms did

not reach the level of an overt act leading to the commission of child molesting).

It is our conclusion in the present case that Glass's acts were sufficient to show an act, beyond mere preparation, toward commission of the attempted crime. After having arranged with BBG14 to meet at a specific time and place for the expressed purpose of sexual activity, Glass arrived at that meeting place at approximately the appointed time with a box of condoms in his vehicle. This conduct goes beyond remote preparatory activity and unequivocally confirms a criminal design. He was unable to proceed further only because no fourteen-year-old girl appeared at the rendezvous point.

Glass contends that his driving through the parking lot without stopping was consistent with his position, presented at trial, that he went to the meeting place out of curiosity to see the girl rather than to pick her up. This defense theory does not explain, however, why Glass had taken care to have a supply of condoms at the ready during this trip to the swimming pool. The evidence is more than adequate to support a jury finding that Glass drove away merely because there was no girl to stop for. The jury could reasonably find that Glass had not abandoned his effort to commit the crime but had simply been prevented from proceeding further because BBG14 was not there. Accordingly, we hold that the district court did not err in denying Glass's motion for a judgment of acquittal.

Glass further asserts that the trial evidence is insufficient to support a finding that he had the intent necessary to support a guilty verdict. We conclude, to the contrary, that the record includes abundant evidence of his culpable intent. Glass initiated at least three online conversations with BBG14 in which he expressed his desire for a sexual relationship with her. He made arrangements to meet with her for a sexual encounter, and arrived at the appointed time and place with a box of condoms in his car. This evidence is sufficient to allow a jury to infer that Glass intended to commit lewd and lascivious conduct with a child under the age of sixteen.

## C. Sentence

Lastly, Glass contends that the district court abused its discretion by imposing an excessive period of probation. He argues that the seven-year probation term is improper because its length is not reasonably related to the goal of rehabilitation.

When a sentence is challenged on appeal, we examine the record, focusing upon the nature of the offense and the character of the offender, to determine if there has been an abuse of the sentencing court's discretion. *State v. Young,* 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991). The defendant bears the burden to show that the sentence is unreasonable in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App. 1982). We will find that the trial court abused its discretion in sentencing only if the defendant, in light of the objectives of sentencing, shows that his sentence was excessive under any reasonable view of the facts. *State v. Charboneau,* 124 Idaho 497, 499, 861 P.2d 67, 69 (1993); *Brown,* 121 Idaho at 393, 825 P.2d at 490. We have reviewed the record in this case and conclude that the probationary period is not unreasonable.

## III.

### CONCLUSION

The district court did not err in denying Glass's motion to dismiss the indictment nor his motion for a judgment of acquittal, and Glass has not shown that the period of probation imposed by the district court is excessive. Accordingly, the judgment of conviction and sentence are affirmed.

Judge PERRY and Judge GUTIERREZ concur.